## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SMITH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PENNSYLVANIA STATE EDUCATION ASSOCIATION,<br><br>Defendant. | CIVIL ACTION NO.<br><br>**COMPLAINT**<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff James Smith ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint and alleges the following against Defendant Pennsylvania State Education Association ("PSEA" or "Defendant"), based upon personal knowledge with respect to Plaintiff and upon information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1.     This class action arises out of a cyberattack and data breach (the "Data Breach") involving PSEA, which collected and stored certain personally identifiable information ("PII") and private health information ("PHI") of the Plaintiff and Class Members, all of whom had PII and/or PHI on PSEA servers. Once it was entrusted with safeguarding Class Members' PII, PHI and other sensitive data, PSEA assumed a non-delegable duty to ensure that this information was reasonably kept safe from the foreseeable event of a data security incident. PSEA breached that duty.

1

2.     In a letter dated March 17, 2025, PSEA acknowledged having "experienced a security incident on or about July 6, 2024."[1] In September of 2024, certain websites reported that PSEA's servers had been hacked by the Rhysida ransomware group.[2] PSEA reported to the Maine Attorney General that the Data Breach affected 517,487 individuals.[3]

3.     The information includes at a minimum Class Members' dates of birth, driver's license or state IDs, Social Security numbers, account numbers, account PINs, security codes, passwords and routing numbers, payment card numbers, payment card PINs and payment card expiration dates, passport numbers, taxpayer ID numbers, usernames and passwords, health insurance information and medical information.

4.     Social Security numbers are particularly valuable to criminals like those who targeted PSEA in the Data Breach. This information can be sold and traded on the dark web black market. The loss of a Social Security number is especially troubling because it cannot be easily changed and can be misused in a range of nefarious activities, such as filing fraudulent tax returns to steal tax refund payments, opening new accounts to take out loans, and other forms of identity theft.

5.     Plaintiff brings this class action lawsuit on behalf of himself and all those similarly situated to address PSEA's inadequate safeguarding of Class Members' PII and PHI that it

---

[1] *See* Notice of Data Security Incident, available at  https://www.maine.gov/agviewer/ content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/e44266ce-8099-4d3c-8635- 2c5cdb41f24a.html (last visited Mar. 19, 2025).

[2] *See*, *e.g.,* Pennsylvania State Education Association Data Breach on September 10, 2024, available at https://www.breachsense.com/breaches/pennsylvania-state-education- association-data-breach/ (last visited Mar. 18, 2025).

[3] Data Breach Notifications, available at https://www.maine.gov/agviewer/ content/ag/985235c7-cb95-4be2-8792-a1252b4f8318/e44266ce-8099-4d3c-8635- 2c5cdb41f24a.html (last visited Mar. 19, 2025).

collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information was unsecured and left open to the unauthorized access of any unknown third party.

## PARTIES

### Plaintiff

6.      Plaintiff James Smith is an adult individual and citizen of Pennsylvania. He resides in Jersey Shore, Pennsylvania, which is in Lycoming County. He is a long-time member of the PSEA. On March 18, 2025, Mr. Smith received a "Notice of Data Security Incident" from PSEA via email.

7.      As a result of PSEA's conduct, Mr. Smith has suffered actual damages including, without limitation, time and expenses related to monitoring his financial accounts for fraudulent activity, facing an increased and imminent risk of fraud and identity theft, the lost value of his personal information, and other economic and non-economic harm. Mr. Smith and Class Members will now be forced to expend additional time to review his credit reports and monitor his financial accounts and medical records for fraud or identify theft—particularly since the compromised information includes Social Security numbers.

### Defendant

8.      Defendant Pennsylvania State Education Association is a Pennsylvania non-profit corporation with a registered address of 400 North 3rd Street Harrisburg, PA 17105. PSEA is the collective bargaining agent for teachers and educational support professionals.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2) because (a) there are 100 or more Class Members, (b) at least one Class Member is a

citizen of a state that is diverse from Defendants' citizenship, and (c) the aggregate matter in controversy exceeds $5,000,000, exclusive of interests and costs.

10.    This Court has general personal jurisdiction over the PSEA because PSEA is registered to do business, and maintains its principal place of business, in Harrisburg, Pennsylvania.

11.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because PSEA is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## COMMON FACTUAL ALLEGATIONS

12.    Plaintiff and the proposed Class are current and former members and employees of PSEA, as well as relatives of PSEA employees. PSEA describes itself as "community of education professionals who make a difference in the lives of students every day."[4] PSEA claims to have 178,000 members, who "are teachers, education support professionals, higher education staff, nurses in health care facilities, retired educators, and college students preparing to become teachers."[5]

13.    As noted above, Plaintiff brings this class action against PSEA for PSEA's failure to properly secure and safeguard protected health information as defined by the Health Insurance Information Portability and Accountability Act ("HIPAA"), medical information, and other personally identifiable information, for failing to comply with industry standards to protect and

---

[4] *See* PSEA – Pennsylvania State Education Association, available at https://www.psea.org/  (last visited Mar. 18, 2025).

[5] *See* What exactly is PSEA?, available at https://www.psea.org/about-psea/benefits-of-membership/ (last visited Mar. 18, 2025).

safeguard that information, and for failing to provide timely and adequate notice to Plaintiffs and other members of the class that such information had been compromised.

**PSEA's Lax Data Management and Disclosure of Class Members' Data**

14.     Plaintiff and Class Members provided their PII and PHI to PSEA with the reasonable expectation and mutual understanding that PSEA would comply with its obligations to keep such information confidential and secure from unauthorized access.

15.     However, PSEA failed to secure the PII and PHI of the individuals that provided it with their sensitive information. PSEA specifically failed to ensure that it maintained appropriate safeguards that would have prevented the Data Breach.

16.     PSEA's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches in recent years.

17.     Indeed, PSEA contains a comprehensive privacy policy on its website.[6] The policy claims that PSEA "values the trust and privacy of its members and other supporters."[7] It further claims that PSEA "maintain[s] administrative, technical, and physical safeguards designed to: (1) insure the security and confidentiality of your personal information; (2) protect against any anticipated threats or hazards to the security or integrity of such information; and (3) protect against unauthorized access to or use of such information."[8]

18.     PSEA nevertheless "experienced a security incident on or about July 6, 2024 that impacted our network environment".[9] PSEA claims that it "took steps, to the best of our ability

---

[6] Privacy Policy, available at https://www.psea.org/contact-us/privacy-policy/ (last visited Mar. 18, 2025).

[7] *Id.*

[8] *Id.*

[9] *See supra n.1*, Notice of Data Security Incident.

and knowledge, to ensure that the data taken by the unauthorized actor was deleted — after the "unauthorized actor" had already taken it — and that it is "reviewing its existing policies and training protocols relating to data protection while enhancing security measures and monitoring tools to further mitigate risks of this nature. [10]

19.     Despite first becoming aware of the existence of the Data Breach in July of 2024, PSEA waited until March of 2025 to begin notifying Class Members that their information was compromised.

**Plaintiff and Class Members Suffered Injury as a Result of PSEA's Lax Data Security**

20.     As a result of PSEA's failure to implement and follow even the most basic security procedures, Plaintiff's and Class Members' PII and PHI has been and is now in the hands of unauthorized individuals, which may include including thieves, unknown criminals, banks, credit companies, and other potentially hostile individuals. Plaintiff and other Class Members now face an increased risk of identity theft, particularly due to the dissemination of their Social Security Number and other impacted information, and will continue to spend significant time and money to protect themselves due to PSEA's Data Breach.

21.     Plaintiff and other Class Members have had their most personal and sensitive PII and PHI disseminated to the public at large and have experienced and will continue to experience emotional pain and mental anguish and embarrassment.

22.     Plaintiff and Class Members face an increased risk of identity theft, phishing attacks, and related cybercrimes because of the Data Breach. Those impacted are under heightened and prolonged anxiety, as they will be at risk for falling victim for cybercrimes for years to come.

---

[10] *Id.*

23.     Class Members maintain valuable property rights in their PII and PHI, and its value as a commodity is measurable.[11] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[12] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[13] It is so valuable to identity thieves that once PII/PHI has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

24.     As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals have openly posted credit card numbers, Social Security numbers, PII/PHI, and other sensitive information directly on various Internet websites, making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims.

25.     PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[14] A cybercriminal who steals a person's PHI can end up with as many as "seven to 10

---

[11] See Marc van Lieshout, The Value of Personal Data, 457 IFIP Advances in Information and Communication Technology 26 (May 2015), available at https://www.researchgate.net/ publication/ 283668023_ (last visited Mar. 18, 2025).

[12] Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value, OECD 4 (Apr. 2, 2013), available at https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en (last visited Mar. 18, 2025).

[13] U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017, Interactive Advertising Bureau (Dec. 5, 2018), available at https://www.iab.com/news/2018-state-of-data-report/ (last visited Mar. 18, 2025).

[14] See Andrew Steger, What Happens to Stolen Healthcare Data?, HealthTech Magazine (Oct. 30, 2019), available at https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.") (last visited Mar. 18, 2025).

personal identifying characteristics of an individual."[15] A study by Experian found that the "average total cost" of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[16]

26.    Personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[17] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[18] All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market.[19] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[20] According to a report released by the Federal

---

[15] *Id*.

[16] Elinor Mills, Study: Medical identity theft is costly for victims, CNET (Mar. 3, 2010, 5:00 AM), available at https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims (last visited Mar. 18, 2025).

[17] Anita George, Your personal data is for sale on the dark web. Here's how much it costs, Digital Trends (Oct. 16, 2019), available at https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Mar. 18, 2025).

[18] Brian Stack, Here's How Much Your Personal Information Is Selling for on the Dark Web, Experian (Dec. 6, 2017), available at https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Mar. 18, 2025).

[19] Adam Greenberg, Health insurance credentials fetch high prices in the online black market, SC Magazine (July 16, 2013), available at https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market (last visited Mar. 18, 2025).

[20] In the Dark, VPNOverview.com, 2019, available at https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited on Mar. 18, 2025).

Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[21]

27.    Consumers place a high value on the privacy of that data. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[22]

28.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

29.    Indeed, cyberattacks against the healthcare industry have been common for over ten years with the Federal Bureau of Investigation ("FBI") warning as early as 2011 that cybercriminals were "advancing their abilities to attack a system remotely" and "[o]nce a system is compromised, cyber criminals will use their accesses to obtain PII." The FBI further warned that that "the increasing sophistication of cyber criminals will no doubt lead to an escalation in cybercrime."[23]

---

[21] See Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain, FBI Cyber Division (Apr. 8, 2014), available at https://www.illuminweb. com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf (last visited on Mar. 18, 2025).

[22] Janice Y. Tsai et al., The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study, 22(2) Information Systems Research 254 (June 2011), available at https://www.jstor.org/stable/23015560?seq=1 (last accessed on Mar. 18, 2025).

[23] Gordon M. Snow, Statement before the House Financial Services Committee, Subcommittee on Financial Institutions and Consumer Credit, FBI (Sept. 14, 2011), https://archives.fbi.gov/archives/news/testimony/cyber-security-threats-to-the-financial-sector (last visited November 30, 2022).

30.     Plaintiff and members of the Class, as a whole, must immediately devote time, energy, and money to: 1) closely monitor their medical statements, bills, records, and credit and financial accounts; 2) change login and password information on any sensitive account even more frequently than they already do; 3) more carefully screen and scrutinize phone calls, emails, and other communications to ensure that they are not being targeted in a social engineering or spear phishing attack; and 4) search for suitable identity theft protection and credit monitoring services, and pay to procure them.

31.     Once PII and PHI is exposed, there is virtually no way to ensure that the exposed information has been fully recovered or contained against future misuse. For this reason, Plaintiff and Class Members will need to maintain these heightened measures for years, and possibly their entire lives, as a result of PSEA's conduct. Further, the value of Plaintiff's and Class members' PHI has been diminished by its exposure in the Data Breach.

32.     As a result of PSEA's data security failures, Plaintiff and Class Members are at substantial risk of suffering identity theft and fraud or misuse of their PHI.

33.     Plaintiff and Class Members suffered actual injury from having PII and PHI compromised as a result of PSEA'S negligent data management and resulting Data Breach including, but not limited to (a) damage to and diminution in the value of their PII and PHI, a form of property that PSEA obtained from Plaintiff; (b) violation of their privacy rights; and (c) present and increased risk arising from the identity theft and fraud.

34.     For the reasons mentioned above, PSEA's conduct, which allowed the Data Breach to occur, caused Plaintiff and members of the Class these significant injuries and harm.

35.    Plaintiff brings this class action against PSEA for its failure to properly secure and safeguard their PII and PHI and for failing to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their PHI had been compromised.

36.    Plaintiff, individually and on behalf of all other similarly situated individuals, alleges claims in negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, and unjust enrichment.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23(a) and (b).

53.    Plaintiff proposes the following Class definition, subject to amendment as appropriate:

**Nationwide Class**

All United States citizens whose PII and/or PHI was compromised as a result of the Data Breach disclosed by PSEA on or around March 17, 2025 (the "Nationwide Class").

**Pennsylvania Subclass**

All Pennsylvania citizens whose PII and/or PHI was compromised as a result of the Data Breach disclosed by PSEA on or around March 17, 2025 (the "Pennsylvania Class").

54.    Excluded from the Class are PSEA's officers and directors, and any entity in which PSEA has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of PSEA. Excluded also from the Class are Members of the judiciary to whom this case is assigned, their families and Members of their staff.

55.     Plaintiff reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery. The proposed Class meets the criteria for certification as set forth below.

56.     <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. As noted above, PSEA reported to the Maine Attorney General that the Data Breach affected 517,487 people.

57.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.      Whether PSEA unlawfully used, maintained, lost, or disclosed Plaintiff's and Class Members' Private Information;

b.      Whether PSEA failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

c.      Whether PSEA's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

d.      Whether PSEA's data security systems prior to and during the Data Breach were consistent with industry standards;

e.      Whether PSEA owed a duty to Class Members to safeguard their PII and PHI;

f.      Whether PSEA breached its duty to Class Members to safeguard their PII and PHI;

g.      Whether computer hackers obtained Class Members' PII and PHI in the Data Breach;

h.    Whether PSEA knew or should have known that its data security systems and monitoring processes were deficient;

i.    Whether Plaintiff and Class Members suffered legally cognizable damages as a result of PSEA's misconduct;

j.    Whether PSEA's conduct was negligent;

k.    Whether PSEA's conduct was *per se* negligent;

l.    Whether PSEA was unjustly enriched;

m.   Whether PSEA failed to provide notice of the Data Breach in a timely manner; and

n.    Whether Plaintiff and Class Members are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

58.    <u>Typicality</u>. Plaintiff's claims are typical of those of other Class Members because Plaintiff's PII and PHI, like that of every other Class member, was compromised in the Data Breach.

59.    <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiff's Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

60.    <u>Predominance</u>. PSEA has engaged in a common course of conduct toward Plaintiff and Class Members, in that all the Plaintiff's and Class Members' data was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from PSEA's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

61.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for PSEA. In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

62.    PSEA has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

63.    Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.    Whether PSEA failed to timely notify the public of the Data Breach;

b.    Whether PSEA owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

c.    Whether PSEA's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d.    Whether PSEA's failure to institute adequate protective security measures amounted to negligence;

14

e.    Whether PSEA failed to take commercially reasonable steps to safeguard consumer Private Information; and

f.    Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

64.    Finally, all members of the proposed Class are readily ascertainable. PSEA has access to Class Members' names and addresses affected by the Data Breach. In fact, Class Members have already been preliminarily identified and sent notice of the Data Breach by PSEA.

## CAUSES OF ACTION

### First Count
### Negligence
### (On Behalf of Plaintiff and the Nationwide Class, or alternatively, Plaintiff and the Pennsylvania Subclass Members)

65.    Plaintiff re-alleges and incorporates the above allegations as if fully set forth herein.

66.    PSEA required Plaintiff and Class Members to submit non-public personal information in order to obtain healthcare/medical services.

67.    By collecting and storing this data in PSEA's computer facilities, and sharing it and using it for commercial gain, PSEA had a duty of care to use reasonable means to secure and safeguard those facilities — and Class Members' PII and PHI held within them — to prevent disclosure of the information, and to safeguard the information from theft. PSEA's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a Data Breach.

68.    PSEA owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its

systems and networks, and the personnel responsible for them, adequately protected the PII and PHI.

69.    PSEA's duty of care to use reasonable security measures arose as a result of the special relationship that existed between PSEA and its members, employees, and employees' relatives, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. PSEA was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

70.    PSEA's duty to use reasonable security measures under HIPAA required PSEA to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the healthcare, medical, and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

71.    In addition, PSEA had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

72.    PSEA's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because PSEA is bound by industry standards to protect confidential PII and PHI.

73.    PSEA breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII and PHI. The specific negligent acts and omissions committed by PSEA include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII and PHI;

b. Failing to adequately monitor the security of its networks and systems;

c. Failure to periodically ensure that its email system had plans in place to maintain reasonable data security safeguards;

d. Allowing unauthorized access to Class Members' PII and PHI;

e. Failing to detect in a timely manner that Class Members' PII and PHI had been compromised; and

f. Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages;

74. It was foreseeable that PSEA's failure to use reasonable measures to protect Class Members' PII and PHI would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches involving health information.

75. It was therefore foreseeable that the failure to adequately safeguard Class Members' Private Information would result in one or more types of injuries to Class Members.

76. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

77. PSEA's negligent conduct is ongoing, in that it still holds the PII and PHI of Plaintiff and Class Members in an unsafe and unsecure manner.

78. Plaintiff and Class Members are also entitled to injunctive relief requiring PSEA to (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual

audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**Second Count**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Nationwide Class, or alternatively, Plaintiff and the Pennsylvania Subclass Members)**

79.     Plaintiff re-alleges the above allegations as if fully set forth herein.

80.     When Plaintiff and Class Members provided their PII and PHI to PSEA in exchange for PSEA's services, they entered into implied contracts with PSEA pursuant to which PSEA agreed to reasonably protect such information.

81.     PSEA solicited, offered, and invited Class Members to provide their PII and PHI as part of PSEA's regular business practices. Plaintiff and Class Members accepted PSEA's offers and provided their PII and PHI to PSEA.

82.     In entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that PSEA's data security practices complied with relevant laws and regulations, including HIPAA, and were consistent with industry standards.

83.     Plaintiff and Class Members paid money to PSEA with the reasonable belief and expectation that PSEA would use part of its earnings to obtain adequate data security. PSEA failed to do so.

84.     Plaintiff and Class Members would not have entrusted their PII and PHI to PSEA in the absence of the implied contract between them and PSEA to keep their information reasonably secure.

85.     Plaintiff and Class Members would not have entrusted their PII and PHI to PSEA in the absence of its implied promise to monitor its computer systems and networks to ensure that it had adopted reasonable data security measures.

18

86.     Plaintiff and Class Members fully and adequately performed their obligations under their implied contracts with PSEA.

87.     PSEA breached its implied contracts with Class Members by failing to safeguard and protect their PII and PHI.

88.     As a direct and proximate result of PSEA's breach of the implied contracts, Class Members sustained damages as alleged herein, including the loss of the benefit of the bargain.

89.     Plaintiff and Class Members are entitled to compensatory, consequential, and nominal damages suffered as a result of the Data Breach.

90.     Plaintiff and Class Members are also entitled to injunctive relief requiring PSEA to, among other things (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

<u>**Third Count**</u>
**Negligence *Per Se***
**((On Behalf of Plaintiff and the Nationwide Class, or alternatively, Plaintiff and the Pennsylvania Subclass Members)**

91.     Plaintiff re-alleges the above allegations as if fully set forth herein.

92.     Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45, PSEA had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff' and Class Members' PII and PHI.

93.     Pursuant to HIPAA, 42 U.S.C. § 1302d, et seq., PSEA had a duty to implement reasonable safeguards to protect Plaintiff's and Class Members' Private Information.

94.     Pursuant to HIPAA, PSEA had a duty to render the electronic PII and PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals, as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which

there is a low probability of assigning meaning without use of a confidential process or key." *See* 45 C.F.R. § 164.304 (defining "encryption").

95.    PSEA breached its duties to Plaintiff and Class Members under the Federal Trade Commission Act and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' PII and PHI.

96.    PSEA's failure to comply with applicable laws and regulations constitutes negligence *per se*.

97.    But for PSEA's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, Plaintiff and Class Members would not have been injured.

98.    The injury and harm suffered by Plaintiff and Class Members was the reasonably foreseeable result of PSEA's breach of its duties. PSEA knew or should have known that its failure to comply with its duties, and that PSEA's breach would cause Plaintiff and Class Members to experience the foreseeable harms associated with the exposure of their PII and PHI.

99.    As a direct and proximate result of PSEA's negligent conduct, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

<u>**Fourth Count**</u>
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Nationwide Class, or alternatively, Plaintiff and the Pennsylvania Subclass Members)**

100.    Plaintiff re-alleges the above allegations as if fully set forth herein.

101.    In light of the confidential relationship between PSEA and Plaintiff and Class Members, whereby PSEA became guardian of Plaintiff's and Class Members' PII and PHI, PSEA became a fiduciary by its undertaking and guardianship of the PII and PHI, to act primarily for Plaintiff and Class Members, (1) for the safeguarding of Plaintiff's' and Class Members' PII and

PHI; (2) to timely notify Plaintiff and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) PSEA stored and stores.

102.    PSEA has a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of PSEA's relationship with Plaintiff and Class Members, in particular, to keep their PII and PHI secure.

103.    PSEA's fiduciary duties to Plaintiff and Class Members were non-delegable.

104.    PSEA breached its fiduciary duties to Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

105.    PSEA breached its fiduciary duties to Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Plaintiff's and Class Members' PII and PHI.

106.    PSEA breached its fiduciary duties owed to Plaintiff and Class Members by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach.

107.    PSEA breached its fiduciary duties to Plaintiff and Class Members by otherwise failing to safeguard Plaintiff's and Class Members' PII and PHI.

108.    As a direct and proximate result of PSEA's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the compromise, publication, and/or theft of their PII and PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PII and PHI; (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to

prevent, detect, contest, and recover from identity theft; (v) the continued risk to their PII and PHI, which remains in PSEA's possession and is subject to further unauthorized disclosures so long as PSEA fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession; (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (vii) the diminished value of PSEA's services they received.

109.    As a direct and proximate result of PSEA's breach of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

**Fifth Count**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class, or alternatively, Plaintiff and the Pennsylvania Subclass Members)**

110.    Plaintiff re-alleges the above allegations as if fully set forth herein. Plaintiff brings this claim individually and on behalf of all Class Members. This count is plead in the alternative to the breach of implied contract count above.

111.    Upon information and belief, PSEA funds its data security measures entirely from its general revenue, including payments made by or on behalf of Plaintiff and the Class Members.

112.    As such, a portion of the payments made by or on behalf of Plaintiff and the Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each payment made that is allocated to data security is known to PSEA.

113.    Plaintiff and Class Members conferred a monetary benefit on PSEA. Specifically, they purchased goods and services from PSEA and/or its agents and in so doing provided PSEA with their PII and PHI. In exchange, Plaintiff and Class Members should have received from PSEA

the goods and services that were the subject of the transaction and had their PII and PHI protected with adequate data security.

114.    PSEA knew that Plaintiff and Class Members conferred a benefit which PSEA accepted. PSEA profited from these transactions and used the PII and PHI of Plaintiff and Class Members for business purposes.

115.    In particular, PSEA enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII and PHI. Instead of providing a reasonable level of security that would have prevented the hacking incident, PSEA instead chose to increase its own profits at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of PSEA's decision to prioritize its own profits over the requisite data security.

116.    Under the principles of equity and good conscience, PSEA should not be permitted to retain the money belonging to Plaintiff and Class Members, because PSEA failed to implement appropriate data management and security measures that are mandated by industry standards.

117.    PSEA failed to secure Plaintiff and Class Members' PII and PHI and, therefore, did not provide full compensation for the benefit Plaintiff and Class Members provided.

118.    PSEA acquired the PII and PHI through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

119.    If Plaintiff and Class Members knew that PSEA had not reasonably secured their PII and PHI, they would not have agreed to provide their PII and PHI to PSEA.

120.    Plaintiff and Class Members have no adequate remedy at law.

121.    As a direct and proximate result of PSEA's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (a) actual identity theft; (b) the loss of the opportunity to determine how their PII and PHI are used; (c) the compromise, publication, and/or theft of their PII and PHI; (d) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII and PHI; (e) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (f) the continued risk to their PII and PHI, which remains in PSEA's possession and is subject to further unauthorized disclosures so long as PSEA fails to undertake appropriate and adequate measures to protect PII and PHI in its continued possession; and (g) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the disclosure of their PII and PHI resulting from the Data Breach for the remainder of the lives of Plaintiff and Class Members.

122.    As a direct and proximate result of PSEA's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

123.    PSEA should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, PSEA should be compelled to refund the amounts that Plaintiff and Class Members overpaid for PSEA's services.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

a) For an Order certifying this action as a class action and appointing Plaintiff and his counsel to represent the Class;

b) For equitable relief enjoining PSEA from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff and Class Members' PII and PHI, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

c) For equitable relief compelling PSEA to utilize appropriate methods and policies with respect to consumer data collection, storage, and safety, and to disclose with specificity the type of PII and PHI compromised during the Data Breach;

d) For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of PSEA's wrongful conduct;

e) Ordering PSEA to pay for not less than ten years of credit monitoring services for Plaintiff and the Class;

f) For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined, as allowable by law;

g) For an award of punitive damages, as allowable by law;

h) For an award of attorneys' fees and costs, and any other expense, including expert witness fees;

i) Pre- and post-judgment interest on any amounts awarded; and

j) Such other and further relief as this court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 20, 2025                    Respectfully submitted,

 

_____

Benjamin F. Johns (PA ID 201373)
Samantha E. Holbrook (PA ID 311829)
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Phone: (610) 477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com

Bart D. Cohen (PA ID 57606)
**BAILEY & GLASSER LLP**
1622 Locust Street
Philadelphia, PA 19103
Phone: (267) 973-4855
bcohen@baileyglasser.com

*Counsel for Plaintiff and the Proposed Class*